UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br>    Plaintiffs, <br><br>    v. <br><br> TRIMAS CORPORATION, <br><br>    Defendant. | CAUSE NO.: 1:06-CV-32-TS |

**OPINION AND ORDER**

The Plaintiff, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (formerly the United Steel Workers Union), and the Defendant, TriMas Corporation, dispute the scope of a Neutrality Agreement that they executed to govern their conduct during the Union's organizing campaigns at TriMas facilities. On February 1, 2006, the Union filed this lawsuit to compel TriMas to arbitrate a grievance regarding whether the Neutrality Agreement applies to the Company's Auburn, Indiana, plant. Upon ruling on cross motions for summary judgment, the Court ordered TriMas to arbitrate the Union's grievance according to the terms of the parties' contract. (DE 37; Ct.'s Op. and Order, Feb. 22, 2007.) The Court's order terminated the case and became a final, appealable order. On March 23, 2007, TriMas filed a Notice of Appeal and, on August 15, appellate briefing was completed. The appeal is pending decision before the Seventh Circuit. Oral argument is scheduled for November 29, 2007.

On September 6, the Defendant filed a Motion to Stay Upon Appeal and Waiver of Post Supersedeas Bond [DE 50] pursuant to Federal Rule of Civil Procedure 62(d). The Union objects

to the Defendant's Motion, which became ripe for ruling on October 12.

## DISCUSSION

TriMas submits that, pursuant to Federal Rule of Civil Procedure 62(d), by posting a bond it is entitled to an automatic stay of the execution of the district court's judgment pending appeal. It notes, however, that the court may waive the bond requirement and it requests that the Court do so in this case. The Union argues that Rule 62(d) is inapplicable because the relief granted, an order to arbitrate, is not a monetary judgment. The Union, analyzing TriMas's request under Rules 62(a) and (c) and the case law interpreting those subsections, maintains that TriMas is not entitled to a stay of the arbitration order. TriMas responds that, even if the Court applies the factors used by courts for Rule 62(a) and (c) and for stays of injunctions in general, its motion should be granted.

### A.     Rules of Civil Procedure

Federal Rule of Civil Procedure 62 governs the stay of proceedings to enforce a judgment. Subsection (a) provides,

> **(a) Automatic Stay; Exceptions--Injunctions, Receiverships, and Patent Accountings**. Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry. Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction or in a receivership action, or a judgment or order directing an accounting in an action for infringement of letters patent, shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal. The provisions of subdivision (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction during the pendency of an appeal.

Fed. R. Civ. P. 62(a). Subsection (c) states, in part,

>   **(c) Injunction Pending Appeal.** When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed. R. Civ. P. 62(c). Subsection (d) addresses the giving of a supersedeas bond to obtain a stay, subjection to the exceptions contained in subdivision (a):

>   **(d) Stay Upon Appeal.** When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Fed. R. Civ. P. 62(d).

**B.**   **Cases Involving Requests for Stays of Orders Compelling Arbitration**

The Union is correct in its assertion that a district court's order to arbitrate is not automatically stayed during the pendency of an appeal upon the posting of a supersedeas bond. To obtain a stay of a district court order that compels a company to arbitrate its dispute with a union requires that the company show that it is likely to prevail on appeal and that it will suffer irreparable harm if the stay is denied. *Graphic Commc'ns Union v. Chi. Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985) (holding that being likely to prevail and suffering irreparable harm if the stay is denied are both necessary for obtaining a stay of an order for arbitration in a suit alleging an employer's breach of a collective bargaining contract); *see also PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1052 (7th Cir. 1988) (stating that "*Chicago Tribune* forcefully observed that applicants must show *both* irreparable injury and probable success" to get a stay of arbitration pending appeal).

**1.**     *Irreparable Harm*

The Court finds that TriMas's claims of irreparable harm are not sufficient to sustain its request for a stay of this Court's order. TriMas acknowledges the Seventh Circuit's clear mandate that incurring the expense in time or money of arbitration that may turn out to be wasted does not qualify as irreparable injury. *See PaineWebber*, 843 F.2d at 1051 (reiterating holding from *Chicago Tribune*, 779 F.2d at 15, that the ordinary incidents of litigating or arbitrating a case do not constitute irreparable injury). However, TriMas then goes on to cite a Second Circuit case where a stay of an arbitration award was granted. *See Woodlawn Cemetery v. Local 365, Cemetery Workers and Green Attendants Union*, 930 F.2d 154 (2d Cir. 1991). In *Woodlawn*, the employer sought to stay arbitration of an employee's grievances regarding his termination. The employer had already expended considerable time and expense defending the employee's unfair labor practice charges, arising out of the same conduct, before an Administrative Law Judge for the National Labor Relations Board (NLRB). The court held that, given that the employer would be required to relitigate in a second adversarial proceeding matters that had already been fully tried before the NLRB, unless the court granted a stay, the case presented the type of "extraordinarily rare" circumstances that justified staying arbitration. 930 F.2d at 157.

TriMas uses *Woodlawn* not because the underlying facts are similar, but to argue that, where the harm to the Union is not substantial, potential harm to the Company and its employees will be enough to tip the balance of equities toward granting a stay. Although that may be true in rare circumstances, the Court does not agree with TriMas's analysis of the competing harms present in this case. TriMas has not established that this is the extraordinarily rare case that calls for a stay of the Court's order compelling arbitration. *See Chi. Tribune*, 779 F.2d at 16 (stating

4

that although it declined to say that a party ordered to arbitrate can never show irreparable harm that would support staying the order pending appeal, the court was "confident that such cases will be extraordinarily rare").

As part of its argument regarding the balance of equities, TriMas points to the effect of a stay on the Union. It argues that the Union will not be substantially harmed by the delay in the arbitration proceedings because it maintains the ability to organize employees using traditional methods. It also submits that there is no evidence that employees' rights to organize have been frustrated by the litigation. TriMas argues that the lack of harm to the Union should be weighed against the fact that if the arbitration moves forward and the arbitrator decides that the Neutrality Agreement covers the disputed facilities, any organizing efforts at those facilities may cause harm to the employees because their representation will be decided by a card-check procedure under the Neutrality Agreement rather than through a Board election.

The potential harms that TriMas claims may occur are too speculative to support a finding of irreparable injury. *See, e.g., Indep. Lift Truck Builders Union v. Hyster Co.*, 803 F. Supp. 1374 (C.D. Ill. 1992) (relying on *Chicago Tribune* and *PaineWebbber* to find that employer's worst-case scenario was too speculative to show irreparable harm). TriMas's assertion of harm is this: *if* the Union arbitrates while the appeal is pending, and *if* the arbitrator reaches a decision before the Seventh Circuit reaches a decision, and *if* the arbitrator's decision on the merits is unfavorable to TriMas, and *if* the Union attempts to organize a disputed facility, and *if* the Union obtains majority support, and *if* the Seventh Circuit then decides that the district court should have held a trial on the merits and remands, and *if* a jury finds in favor of TriMas, it (and employees) will have suffered harm. The specific harm suffered if all these condition are

met, according to TriMas, is that any bargaining relationships formed during the period the appeal is pending will have been accomplished through the procedures set forth in the Neutrality Agreement, which provide for the employer's voluntary recognition of the Union if a card-check shows that it has majority support. TriMas argues that because this method of recognition is inferior to Board elections, and bargaining relationships are extraordinarily difficult to undo, the employees at these facilities will have suffered irreparable harm.

If any of the anticipated steps do not occur as TriMas speculates, then the chain is broken and the harm is not realized. The only concrete "harm" that TriMas can point to is being required to "litigate a dispute in a forum not of [its] choosing." *Chi. Tribune*, 779 F.2d at 15. However, as Judge Posner pointed out, this is not a unique or exceptional harm in litigation. *Id.* Indeed, "it is rather a fluke in the law that allows an order to arbitrate to be appealed before the arbitration is completed—and such an appeal is allowed only if the order to arbitrate ends the proceedings in the district court." *Id.* Such is the case here, and TriMas has not established irreparable harm such that a stay of the district court's order is warranted.

The Court will discuss a few of TriMas's "ifs" in more detail.

a. *If the Arbitrator Decides in Favor of the Union on the Merits of the Grievance*

TriMas argues that the Union's position regarding the scope of the Neutrality Agreement is wrong. TriMas does not present any reason why it is more likely that the arbitrator would find in favor of the Union than in favor of TriMas. Nor does TriMas indicate why it believes a jury would find for it, but that an arbitrator would not.

b.     *If the Union Conducts an Organizing Campaign*

Before the harm that TriMas alleges can be realized, the Union must conduct an organizing campaign. However, TriMas itself asserts in its brief, "there is no evidence in the record that any union drive is underway at any plant, or that an NLRB petition has been filed anywhere." (DE 59 at 9.)

c.     *If the Union Obtains Majority Support Through Card-Check*

TriMas cites to *Dana Corp.*, 351 NLRB 28 (NLRB 2007), a September 29, 2007, NLRB decision in support of its claim that one of the harms employees would suffer if the Union conducts an organizing campaign, pursuant to a Neutrality Agreement that should not have applied, is "having their ability to vote under a secret ballot election taken away from them." (DE 59 at 6.)  In *Dana*, the Board modified its "recognition-bar doctrine" to allow employees to file a decertification petition to challenge voluntary union recognition within a certain period after the recognition. This modification governs even where "a card-check and/or neutrality agreement preceded the union's recognition." 351 NLRB at 2. Before the Board's announcement in *Dana*, an employer's voluntary recognition of a union barred a decertification or rival union election petition for a reasonable time after recognition. The Board took care to note that it was not questioning the legality of card-check or neutrality agreements. 351 NLRB at 5. Nor did the Board's decision create a new preference for secret elections over card-checks. *Id.* at 6. That preference had long been recognized. The Board simply modified the election bar rule to reflect this long-standing preference and to provide greater protection for employee free choice. *Id.* at 7.

Employees in a TriMas facility organized pursuant to the Neutrality Agreement card-

7

check procedure would enjoy the benefits of this modification and the protection it provides. Thus, there is actually a better procedure in place for dealing with card-check recognition in the event that the Union subsequently does not have majority support, and less chance that employees' rights will be violated.

**2.**     *Likelihood of Success*

Because the Court has found that TriMas fails to establish irreparable injury, it need not address the likelihood of success on appeal. The Court will leave that matter to the court of appeals.

**ORDER**

For the foregoing reasons, TriMas's Motion for Stay Upon Appeal and Waiver of Posting Supersedeas Bond [DE 50] is DENIED.

SO ORDERED on October 25, 2007.

                                                s/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT